This is an adjourned case by consent from the Circuit Court of Davidson county, and, as far as is necessary to notice it, is as fallows: Tyre Harris, on the 14th of January, 1800, executed his sealed instrument to Alexander Johnson, covenanting thereby to convey a tract of land by good title to the said Alexander Johnson (upon request). Tyre Harris died on ___ 180_, and at the April term of the County Court of Davidson, in the year 1802, administration of, c., was committed to the defendant Susanna. On the 28th February, 1809, the said sealed instrument was exhibited to the defendants, and they were requested to convey, c. On the 9th March, 1809, Alexander Johnson brought his suit in covenant against the defendants by writ returnable to the April County Court of Davidson, at which time a declaration was filed and an agreement made on the rule docket respecting the other pleadings. At April session 1810, the cause was tried upon the pleas, covenant performed, fully administered, no assets and issues joined thereon; verdict in favor of the plaintiff on all the issues, and damages assessed to $1,165.50, and judgment thereon. In 1811, the cause by certiorari, issuing from the Circuit Court of Davidson; the 14th March, same year, and filed with the transcript in said Circuit Court the 10th June following, was removed. At September term of the Circuit Court the plaintiff's death was suggested, and the suit revived in the name of his executor, John Johnson, and continued from term to term, until November term, 1814, when by leave of the Court, upon affidavit, additional pleas were put in. 1st. That Tyre Harris died in ______ 1801, administration granted April, 1802, that she advertised within two months, agreeably to Act of Assembly, and the plaintiff who was a resident within the State did not demand and bring suit within two years after the notification. Replication, did not advertise agreeably to Act of Assembly and issue. 2d plea, that Tyre Harris died in ______ 180_, more than seven years before the commencement of this suit, and plaintiff did not make claim of said demand or bring suit within seven years next after the death, c. Replication, that on 28th February, 1809, and within seven years after the death, c., plaintiff made claim and demand upon the writing c., and defendant promised to pay. Rejoinder, protesting defendant did not promise to pay. They say plaintiff did not within seven years next after the death c., make claim of said demand by bringing suit and general demurrer thereto by way of sur-rejoinder. May term, 1815, verdict on all the issues in favor of the plaintiff, and damages assessed to $1.224.2414; no judgment given on the demurrer.
The principal question between these parties presented by this demurrer to this court for its opinion is, whether the expression in the ninth section of chap. 48, of 1715, of "creditors of any person deceased shall make their claim within seven years after the death of such debtor, otherwise such creditor shall be for ever barred," means that suit shall be brought within seven years by the creditor, or otherwise; that is, that the words "make their claim may mean a different application than by suit, as a parol demand or request to pay, a written demand or a request, c.
Upon looking into the plea, replication, rejoinder, and demurrer, some doubts have been suggested whether these pleadings bring this question properly and substantially before the Court or not. It will be necessary to dispose of this last question first; inasmuch is it will be unnecessary to give an opinion if the case does not judicially exist to require it. The demurrer is taken to the rejoinder. The first thing to be noticed, then, is the rejoinder; it says; "The plaintiff did not within seven years make claim of his demand by bringing suit;" this is a certain, clear, distinct proposition, disclosing one single issuable fact, and the conclusion is to the contrary. The rejoinder, therefore, is sufficient if supports the plea, and is not a departure from it.
The plea is, in substance, "that plaintiff did not make claim of said demand, or bring suit within seven years;" the question here is upon the expression of the pleas; does it mean two distinct matters or one only; is "make claim of said demand, or bring suit" synonymous to the pleader, and a double expression of the same idea; to wit, bringing suit? If it is it must be admitted to be an inartificial mode of expression, but, taking it the other way, the strongest against the pleader, to wit, that it means two distinct things, — the one a demand by a suit, the other a demand in some other manner than by suit; as by parol or by writing, and thereby constituting duplicity; what is the consequence? Does a general demurrer reach it? It does not; duplicity in pleading, or the alleging several distinct facts, is only to be taken advantage of by special demurrer; 5 Bac. Abr. 463, 464; Tidd Pr. 618; for the party must show specially in what the doubleness consists, being only matter, of form, and clearly within, the Statute of 27 Eliz. c. 5; Tidd Pr. 648, and authorities therein cited. Since which statute and the 4th Anne, c. 16, the party in a general demurrer can only take advantage of matters of substance. Tidd Pr. 650. The party here have received this informality by not demurring specially, and pointing out the matters in which the duplicity consists, and replying to the plea. The next question is, Is the rejoinder a departure from the plea? Quite the reverse; if the plea advances two matters, it supports one of them at least, the most important one, otherwise it consolidates the two matters of the plea into one, and is explanatory of the plea. There, then, seems to be a complete issue between these parties upon this record, and it may require the opinion of the Court upon another point beside the one already mentioned to decide the case. The first is, whether the expression of "make their claim," in the Act of 1715, means suit or action; 2dly, whether the Act of 1715, c. 48, sec. 9, is in force. If the Court should be of opinion in the affirmative on both points, then a bar is effectual, and judgment must be given for the defendant. But if the opinion of the Court should be in the negative on either, then judgment for the plaintiff.
As to the first point, this depends upon the import principally of the word "claim," as used in this ninth section. Claim by the common law means a challenge by any man of the property or ownership of a thing which he has not in his possession, but is wrongfully detained from him. Plowden, 257; Butler's note on Co. Lit. 250, a; 1 Lilly's Abr. 386. When the acts of assembly are looked into, we find this meaning enlarged and extended; and that claim is used to signify not only a challenge of the property of a thing out of possession, but is used also to mean, the right or title to this thing out of possession; and still later it is used to mean the thing itself that is so out of possession. An instance of the first or common-law meaning is in 1715, c. 27, sec. 3. An instance of the second meaning is in sections second and fourth of the same act. And an instance of its meaning the thing itself so out of possession is in 1789, c. 23, sec. 4. This last signification evidently applies not; besides I can not find that the term claim had acquired any such meaning at the time of the passing of the Act of 1715. We must look, then, to the common law claim as used in 1715. and we find several kinds of claims; by matter of record as action, c.; by matter in pais as verbal claim, or continual claim. Plowd. 357; Co. Litt. 263, a. Now which of these did the legislature intend in the section in question? This can be best collected by attending to the object the legislature had in view by enacting the section. It was the peace of the country, the repose of society from old demands; the policy adopted by them to secure and promote this end was the imposing a limit upon litigation and controversy beyond which the courts of the country should not sustain their cases and their claims, or challenges of property. Policy dictated a time after which the dormant rights of individuals for the public good should continue to sleep, and the exertions of them be restrained for the benefit of the many. This no doubt was the policy and object of the Act of 1715, c. 48, sec. 9. Which of these claims, then, or meaning were the best calculated to further this policy? For that one, we must presume, the legislature intended that best announced this purpose. Say that claim by demand was intended, and what would it lead to? It would lead to a subversion of the policy of the law fry sustaining suits after seven years, to the disturbance of the public peace; for thereby many suits might be. brought which otherwise would be buried, and in addition operating a detriment to deceased persons' estates by the delay. For thus an unfounded demand, the payment of which was refused from its incorrectness, would gain strength by time by removing the examination of it to a period more remote from its alleged origin, and thus facilitating its establishment by perjury, which delights in obscurity; whereas a suit within the seven years might have been in time for the party to protect himself by evidence which has ceased to exist. Besides by this construction the act would be completely in the power of the parties; for if demand and promise were a sufficient answer to this plea, such might be often made and as often broken, and thus suits entertained by the courts and interests litigated which the act contemplated to have been settled and adjusted ten or twenty years before that time. Take the other meaning of "claim," the challenge, c., by suit; this fully conforms with the views of the legislature, advances its policy, and secures the public peace. It is laid down in Plowd. 357, the law has no other end but repose, and, the law was ordained to put a stop to contention, and to make peace.
The proviso of the fourth section of 1789, c. 23, which says "that if any creditor, after making" demand of his debt or claim, shall delay to bring suit at the special request of the executor, c., that then and in that case the said debt and demand shall not be barred during the time of the indulgence," does not apply to the present case. That proviso extends only to the bar raised by the fourth and fifth sections, and means that when the executor has advertised agreeably to the fifth section, and the creditor has not brought his suit within the second and third years according to his residence, he shall be barred unless he delayed his suit at the request of the executor. The bar in the fourth section only operates in cases of advertisement by the fifth section, and the proviso of the former section takes the particular case out of the bar.
I am therefore of opinion that in the ninth section of the forty-eighth chapter of the Act of 1715, where it says creditors of any person deceased shall make their claim within seven years after the death of such debtor means shall "bring their suit" within seven years after the death of such debtor, otherwise such creditor shall be for ever barred.
The next question is, whether the said ninth section be in force or not. See my opinion in Peay and Waggoner, 5, Hay. 1, 15.
 APPENDIX.